UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KISHA TATE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Judge |
| | ) | |
| SHIRE PHARMACEUTICALS, LLC, | ) | |
| | ) | Magistrate Judge |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Kish Tate, ("Tate"), by her attorneys, Gaffney & Gaffney P.C., for her Complaint against Defendant, Shire Pharmaceuticals, LLC ("Shire"), states:

### Jurisdiction and Venue

1. Tate is a resident of Tinley Park, Cook County, Illinois.

2. Defendant is an international biopharmaceutical company with its United States Headquarters located in Massachusetts at 300 Shire Way, Lexington, MA 02421. Defendant conducts business in Will County, Illinois.

3. This Court has jurisdiction over Tate's claim arising under the Family and Medical Leave Act ("FMLA") pursuant to 28 U.S.C. §1331 and 29 U.S.C. §2615. This Court also has supplemental jurisdiction over Tate's state law claims for violations of the Illinois Human Rights Act ("IHRA") (775 ILCS 5/2-102), pursuant to 28 U.S.C. § 1367, for her employment claims that are so related to the federal claims in this action that it forms part of the same case or controversy under Article III of the Constitution of the United States of America.

4. Venue is proper in this Court as the cause of action accrued in this Judicial District.

**Common Allegations**

5. Tate was hired by Shire on or about April 1, 2016 with an effective start date of April 18, 2016. Tate's position was Sales Specialist-Joliet, Illinois territory.

6. On or about December 7, 2016, Tate was diagnosed by her physician to have a serious medical condition which manifested itself with symptoms of anxiety, vertigo and migraine headaches. Tate was prescribed medications and appraised by her physician that she needed to take a medical leave of absence. Tate's medical conditions were not minor or transitory.

7. Tate needed to take time off from work due to her medical conditions and she was in continuous treatment with a health care provider. Tate appraised Shire of her medical condition and requested a short-term medical leave of absence.

8. Shire granted Tate's short-term medical leave of absence beginning on December 19, 2016. Tate updated Shire regarding the ongoing need for medical leave thereafter.

9. On or about March 15, 2017, Tate provided Shire with a "Request for medical status evaluation under the ADA Amendments Act (the 'ADAAA')". That medical report was prepared by and signed by Tate's treating physician which stated, in part, "anticipated return to work in 8-10 weeks until symptoms resolve".

10. Pursuant to Shire's published short-term disability leave of absence policy and its personal leave of absence policy, Shire regularly affords its employees up to six (6) months of leave without terminating their employment. Under the Shire policy and practice, Tate was eligible for up to six (6) months short-term leave of absence.

11. Pursuant to Shire's policy, pattern and practice, Shire regularly affords its employees up to six (6) months leave of absence without terminating their employment.

12. On or about April 12, 2017, Defendant terminated Tate's employment purportedly on the basis that she was no longer eligible for any leave of absence. Defendant's reason for Tate's termination is pretextual.

## COUNT I – FMLA INTERFERENCE

1-12. Tate incorporates herein paragraphs 1 through 12 of the above Allegations as paragraphs 1 through 12 of this Count I as if fully set forth herein, verbatim.

13. During the 12 months prior to April 18, 2017, Tate worked in excess of 1,250 hours of service for Shire.

14. Tate worked at a Shire location which had at least 50 employees within a 75 mile radius.

15. Tate was an FMLA eligible employee, as defined by 29 U.S.C. §2611(2), for an FMLA leave of absence beginning on or about April 18, 2017.

16. If Tate's employment continued through April 18, 2017, Tate would have then been eligible for FMLA leave.

17. Shire is a covered employer under the FMLA as defined by 29 U.S.C. §2611(4).

18. Tate had FMLA covered medical conditions which consisted which forced her to stay on a medical leave of absence until after April 18, 2017.

19. Tate's had serious health condition which made Tate unable to perform the essential functions of her position. Tate was in treatment with a physician for her serious health conditions. Tate's physician directed her to take time off from work at Shire until after April 18, 2017.

20. Tate applied for both FMLA and short-term medical leave of absence and supported her request with medical documentation. The medical documentation Tate submitted

qualified Tate for both short term medical leave and FMLA leave effective April 18, 2017. Tate provided Shire advance notice of her intent to take FMLA leave pursuant to 29 U.S.C. § 2612(e)(2)(B).

21. Tate sought FMLA leave as of her first eligibility date of April 18, 2017. Prior to her termination of April 12, 2017, Shire knew that Tate was seeking FMLA leave and that she was eligible for FMLA leave as of April 18, 2018.

22. If Shire would not have terminated Tate, she would have become eligible for FMLA leave as of April 18, 2017. Tate would have then used FMLA leave to recover from her medical conditions and returned to work prior to the expiration of her FMLA leave.

23. Defendant's termination of Tate's employment violated 29 U.S.C. §2615(a) and constitutes unlawful conduct.

24. As a direct and proximate result of Defendant's FMLA violation, Tate sustained harm and damage.

25. Tate seeks trial jury on Count I.

WHEREFORE, Plaintiff seeks all relief available pursuant to 29 U.S.C. §2617 of the FMLA including backpay, reinstatement, front pay, liquidated damages and such other appropriate relief as may be available plus attorney's fees, litigation expenses and cost of suit.

## COUNT II – FMLA RETALIATION

1-24. Tate incorporates herein paragraphs 1 through 24 of the above Count I as paragraphs 1 through 24 of this Count II as if fully set forth herein, verbatim.

26. Tate engaged in protected activity by requesting an FMLA leave of absence beginning April 18, 2017.

27. On or about April 12, 2017, Defendant retaliated against Tate for engaging in FMLA protected activity leave by terminating Tate's employment six days before Tate would have become eligible for FMLA leave.

28. There is a casual connection between Tate's protected activity of providing advance notice of her intent to take FMLA leave and Defendant's adverse employment action to terminate Tate on or about April 12, 2017.

29. Tate's engagement in protected FMLA activity was a determining factor in Defendant's decision to terminate Tate on or about April 12, 2017.

30. Defendant's termination of Plaintiff's employment violated 29 U.S.C. §2615(a) and constitutes unlawful conduct.

31. As a direct and proximate result of Defendant's termination of Tate's employment, Tate has sustained harm and damage.

32. Tate seeks trial by jury on Count II.

WHEREFORE, Plaintiff seeks all relief available pursuant to 29 U.S.C. §2617 of the FMLA including backpay, reinstatement, front pay, liquidated damages and such other appropriate relief as may be available plus attorney's fees, litigation expenses and cost of suit.

### **COUNT III – IHRA DISABILITY DISCRIMINATION**

1-12. Tate incorporates herein paragraphs 1 through 12 of the above Common Allegations as paragraphs 1 through 12 of this Count III as if fully set forth herein, verbatim.

33. As of December 2016, and continuing through the date of her employment termination on April 12, 2017, Tate had a disability as that term is defined by the IHRA (775 ILCS 5/1-103(I)); 56 Ill. Admin. Code Title 56, § 2500.20 & 2500.30.

34. Tate was an "employee" of Shire as that term is defined by the IHRA. 775 ILCS 5/2-101(A).

35. Shire was an "employer" of Tate as that term is defined by the IHRA. 775 ILCS 5/2-101(B).

36. Tate was employed by Shire from on or about April 18, 2016 until involuntarily terminated on or about April 12, 2017.

37. Pursuant to its policies, Shire regularly affords employees to take a medical leave of absence or personal leave of absence for up to six (6) months.

38. In December, 2016, Tate requested a medical leave of absence because of her disability.

39. On or about December 27, 2016, Tate submitted a claim for short-term disability benefits and FMLA benefits because of her disability.

40. Tate was deemed ineligible for FMLA benefits from December 19, 2016 through April 17, 2017 because she had not yet met the twelve (12) continuous months of service requirements but then eligible for FMLA leave beginning on or about April 18, 2017.

41. Tate was deemed eligible for short-term disability leave benefits from December 19, 2016 until February 25, 2017. Tate then supplemented her request for ongoing short-term disability benefits with medical documentation from her treating physician on or about February 24, 2017. The medical documents Tate and her physician provided Shire were sufficient to support her claim for short-term disability benefits after February 25, 2017.

42. Tate requested a reasonable accommodation of additional short-term leave of absence through at least April 18, 2018.

43. If Shire would have granted Tate's request for a reasonable accommodation, Tate would have become eligible for FMLA leave of absence beginning April 18, 2017.

44. On or about March 15, 2017, Tate provided Shire with a "Request for medical status evaluation under the ADA Amendments Act (the 'ADAAA')". That medical report was prepared and signed by Tate's treating physician which stated, in part, "anticipated return to work in 8-10 weeks until symptoms resolve". Tate's request for an additional medical leave of absence constitutes of eight to ten weeks constitutes a request for a reasonable accommodation as defined by the IHRA. Ill. Admin. Code 56 § 2500.40.

45. Shire violated the IHRA in the following regards:

   a. Shire discriminated against Tate based on her disability by denying Tate's claim for short-term disability benefits effective February 25, 2017;

   b. Shire refused to consider or denied Tate's request for a reasonable accommodation of a short term leave of absence through at least April 18, 2018 when should would have then eligible for FMLA leave;

   c. Shire discriminated against Tate based on her disability by terminating her employment on April 12, 2017; and

   d. Shire retaliated against Tate by terminating Tate's employment after Tate engaged in protected activity by requesting a medical leave of absence (775 ILCS 5/6-101(A)).

46. Tate has exhausted her administrative remedies by filing a charge of discrimination with the Illinois Department of Human Rights (IDHR) on October 11, 2017 (Charge No. 2018 CF 0741). A copy thereof is attached as Exhibit A.

7

47. On October 12, 2018, the IDHR dismissed Tate's Charge No. 2018 CF 0741 and provided Tate with a notice of her right to commence a civil action within ninety (90) days of receipt of the notice. A copy thereof is attached as Exhibit B.

48. As a direct and proximate result thereof, Tate has sustained damages.

49. Tate seeks trial by jury on Count III.

WHEREFORE, Tate seeks an Order finding that Shire violated the IHRA and for judgment against Shire for all legal, equitable and make-whole relief as afforded by the IHRA plus attorney's fees, litigation expenses and costs of suit.

Respectfully submitted,

*/s/ Glenn R. Gaffney*_____
Glenn R. Gaffney
One of Kisha Tate's Attorneys

## JURY DEMAND

TATE demands trial by Jury on all Counts.

*/s/ Glenn R. Gaffney*_____
Glenn R. Gaffney
One of Kisha Tate's Attorneys

Glenn R. Gaffney (6180598)
Joseph F. Kwiatkowski (6322644)
Gaffney & Gaffney P.C.
1771 Bloomingdale Road
Glendale Heights, IL 60139
(630) 462-1200 x 4
*glenn@gaffneylawpc.com*
*jk@gaffneylawpc.com*